# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## MARSHALL DIVISION

| | |
|---|---|
| **DIORITE TECHNOLOGY, LLC,** | |
| **Plaintiff,** | **Civil Action No. 2:25-CV-00591-RWS-RSP** |
| **vs.** | |
| **CISCO SYSTEMS, INC.,** | **JURY TRIAL DEMANDED** |
| **Defendant.** | |

## DEFENDANT CISCO SYSTEMS, INC.'S MOTION TO DISMISS
## PLAINTIFF DIORITE TECHNOLOGY, LLC'S AMENDED COMPLAINT

**TABLE OF CONTENTS**

                                                                                                    **Page**

I.      INTRODUCTION ....................................................................................................... 1

II.     STATEMENT OF THE ISSUES.................................................................................. 2

III.    STATEMENT OF FACTS .......................................................................................... 2

IV.     LEGAL STANDARD.................................................................................................. 2

V.      ARGUMENT............................................................................................................... 3

    A.  Diorite does not plausibly plead infringement of the '421 Patent. ...................... 4

        1.  Claim 1 requires the display of distinct graphical user interface elements.................... 5

        2.  Diorite's allegations are cursory and contradict infringement....................................... 7

    B.  Diorite's infringement allegations for the '820 Patent are also implausible. .................. 13

        1.  The accused products cannot plausibly be the claimed "mass audio notification
            *system*."................................................................................................................ 13

        2.  Diorite fails to plausibly allege infringement of limitations [1.5] and [1.7]................. 16

    C.  Diorite fails to plausibly allege that Cisco infringes the '759 Patent. ............................ 17

    D.  Diorite's indirect infringement allegations fare no better.............................................. 22

        1.  For induced infringement, Diorite fails to offer any factual allegations....................... 22

        2.  The same is true for Diorite's contributory infringement allegations, also requiring
            dismissal. ............................................................................................................... 23

VI.     CONCLUSION............................................................................................................. 23

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Amgen Inc. v. Coherus BioSciences, Inc.*,
931 F.3d 1154 (Fed. Cir. 2019)........................................................................................9

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009).......................................................................................................2, 3

*Audio Evolution Diagnostics, Inc. v. United States*,
162 Fed. Cl. 73 (2022) ...................................................................................................3, 4

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007).......................................................................................................2, 3

*In re Bill of Lading*,
681 F.3d 1323 (Fed. Cir. 2012).........................................................................................21

*Bot M8 LLC v. Sony Corp. of Am.*,
4 F.4th 1342 (Fed. Cir. 2021) ...........................................................................8, 16, 17, 21

*Chapterhouse, LLC v. Shopify, Inc.*,
No. 2:18-CV-300-JRG, 2018 WL 6981828 (E.D. Tex. Dec. 11, 2018) ...........................15, 17

*Core Wireless Licensing S.A.R.L. v. Apple Inc.*,
No. 6:14-CV-752-JRG-JDL, 2015 WL 4910427 (E.D. Tex. Aug. 14, 2015) ...................22, 23

*CTD Networks, LLC v. Google, LLC*,
688 F. Supp. 3d 490 (W.D. Tex. 2023)...........................................................................3, 4

*Cuvillier v. Sullivan*,
503 F.3d 397 (5th Cir. 2007) ...............................................................................................3

*Encoditech, LLC v. Citizen Watch Co. of Am., Inc.*,
No. SA-18-CV-1335-XR, 2019 WL 2601347 (W.D. Tex. June 25, 2019) ...........................15

*F2VS Techs., LLC v. Aruba Networks, Inc.*,
No. 17-CV-0754, 2018 WL 1732152 (D. Del. Apr. 10, 2018)...............................................15

*Heidary v. Amazon, Inc.*,
No. 2024-1580, 2024 WL 4489918 (Fed. Cir. 2024) ..................................................... *passim*

*IDB Ventures, LLC v. Charlotte Russe Holdings, Inc.*,
360 F. Supp. 3d 541 (E.D. Tex. 2018).................................................................................3

ii

*Nobelbiz, Inc. v. Insidesales.com, Inc.*,
　No. 6:13-CV-360-MHS, 2014 WL 12378804 (E.D. Tex. Oct. 14, 2014) ...............................22

*NorthStar Sys. LLC v. Volkswagen AG*,
　No. 2:22-CV-00486, 2023 WL 5723648 (E.D. Tex. Sep. 5, 2023).........................1, 15, 17, 22

*Opticurrent, LLC v. Power Integrations, Inc.*,
　No. 2:16-CV-325-JRG, 2016 WL 9275395 (E.D. Tex. Oct. 19, 2016)......................................4

*Qwikcash, LLC v. Blackhawk Network Holdings, Inc.*,
　No. 4:19-CV-876-SDJ, 2020 WL 6781566 (E.D. Tex. Nov. 17, 2020) ........................8, 16, 17

*Stragent, LLC v. BMW of N. Am., LLC*,
　No. 6:16-CV-446-RWS-KNM, 2017 WL 2821697 (E.D. Tex. Mar. 3, 2017)........................19

*UltimatePointer, L.L.C. v. LG Elecs., Inc.*,
　No. 2:22-CV-00406-JRG, 2023 WL 5511520 (E.D. Tex. Aug. 25, 2023)................................9

*Vervain, LLC v. Micron Tech., Inc.*,
　No. 6:21-CV-487-ADA, 2022 WL 23469 (W.D. Tex. Jan. 3, 2022) ......................................21

**Statutes**

35 U.S.C. § 271(a) ......................................................................................................................4

**Other Authorities**

Fed. R. Civ. P. 12(b)(6)...............................................................................................................3

Fed. R. Civ. P. 201 ......................................................................................................................9

## I.   INTRODUCTION

Even with the benefit of amending the complaint, Plaintiff Diorite Technology, LLC's ("Diorite") complaint still does not plausibly allege infringement by Defendant Cisco Systems, Inc. ("Cisco"). Instead of meaningfully addressing how the accused products purportedly meet the claim limitations of any of the asserted patents, Diorite resorts to threadbare allegations of direct infringement that altogether ignore key aspects of the claims. Indeed, despite the second bite at the apple, the issues identified in the original motion to dismiss persist in the Amended Complaint (Dkt. 16).

Specifically, Diorite's amended complaint and claim charts (Dkts. 16-2, 16-4, and 16-6) still parrot the claim language and summarily assert that the accused products infringe without any further explanation, opting instead to merely copy-and-paste the same few, seemingly irrelevant screenshots across disparate claim limitations with vastly different requirements. Direct infringement cannot be pled on so little. In fact, for direct-infringement claims to persist, a complaint must plausibly allege infringement of every limitation of a claim. *Heidary v. Amazon, Inc.*, No. 2024-1580, 2024 WL 4489918, at *3–4 (Fed. Cir. 2024); *NorthStar Sys. LLC v. Volkswagen AG*, No. 2:22-CV-00486, 2023 WL 5723648, at *3 (E.D. Tex. Sep. 5, 2023) (dismissing direct-infringement claim where plaintiff "does little more than parrot the claim language. [Plaintiff] breaks out the elements of the claims, copies them to the Complaint, and prepends language to the effect of '[The Accused Product] performs the step of . . . .' There should be more than the claim language presented this way.").

This dooms both Diorite's direct- and indirect-infringement claims. Moreover, its indirect-infringement claims are improper, because Diorite just recites the relevant statutory and legal language in a conclusory fashion, rather than predicating its indirect-infringement claims on

factual allegations, as required. Diorite's actions demonstrate that it is unable to meet the standard set by *Twombly*, *Iqbal*, and the Federal Rules of Civil Procedure; therefore, its infringement allegations should be dismissed in their entirety for all the asserted patents.

## II.    STATEMENT OF THE ISSUES

1.    Whether Diorite's inability to plausibly allege infringement for every limitation of the charted claims warrants dismissal of its direct-infringement allegations.

2.    Whether Diorite's failure to sufficiently allege direct infringement or put forward any factual allegations related to Cisco's supposed indirect infringement is fatal to its indirect-infringement claims.

## III.    STATEMENT OF FACTS

Diorite filed its original Complaint on May 28, 2025, asserting that Cisco infringes U.S. Patent No. 8,189,759 (the "'759 Patent"), U.S. Patent No. 9,007,421 (the "'421 Patent"), and U.S. Patent No. 9,344,820 (the "'820 Patent") (collectively, the "Asserted Patents"). *See* Dkts. 1, 1-1, 1-3, 1-5. Cisco filed an initial motion to dismiss (Dkt. 14), and Diorite has now responded with an Amended Complaint and amended claim charts. Dkts. 16, 16-2, 16-4, 16-6. Diorite alleges that Cisco both directly and indirectly infringes the Asserted Patents. Dkt. 16 ¶¶ 10–12, 18–20, 26–28. Attached to Diorite's Amended Complaint are claim charts that purport to show how Cisco infringes each limitation of the Asserted Patents. *See* Dkts. 16-2, 16-4, 16-6.

As demonstrated below, Diorite fails to adequately allege direct or indirect infringement of any of the Asserted Patents. The Court should dismiss these claims for failing to meet the standard in *Iqbal* and *Twombly*.

## IV.    LEGAL STANDARD

In order to survive a motion to dismiss, "a complaint must contain sufficient factual matter,

accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is not plausible unless the "plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). Dismissal of a complaint is appropriate under Rule 12(b)(6) of the Federal Rules of Civil Procedure when the complaint does not state a claim upon which relief can be granted or "provide the plaintiff's grounds for entitlement to relief—including factual allegations that when assumed to be true raise a right to relief above the speculative level." *Cuvillier v. Sullivan*, 503 F.3d 397, 401 (5th Cir. 2007) (internal citations and quotations omitted). But courts "are not bound to accept as true a legal conclusion couched as a factual allegation," and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to meet the plausibility standard. *Ashcroft*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). Further, dismissal is appropriate after a plaintiff has amended and failed to address deficiencies present in the original complaint. *See IDB Ventures, LLC v. Charlotte Russe Holdings, Inc.*, 360 F. Supp. 3d 541, 558 (E.D. Tex. 2018) (Bryson, J.); *see also CTD Networks, LLC v. Google, LLC*, 688 F. Supp. 3d 490, 501–03 (W.D. Tex. 2023); *cf. Audio Evolution Diagnostics, Inc. v. United States*, 162 Fed. Cl. 73, 76 (2022).

## V.    ARGUMENT

Diorite's Amended Complaint, which contains minimal edits to the allegations, maintains positions that were identified as deficient in Cisco's original motion to dismiss. *Compare* Dkt. 16, *with* Dkt. 14. Since Diorite failed to take advantage of the opportunity to address these deficiencies in the minimal amendments, it is clear that any further allowance of amendment would be futile. *IDB Ventures, LLC v. Charlotte Russe Holdings, Inc.*, 360 F. Supp. 3d 541, 558 (E.D. Tex. 2018)

3

(Bryson, J.); *see CTD Networks, LLC v. Google, LLC*, 688 F. Supp. 3d 490, 501–03 (W.D. Tex. 2023); *cf. Audio Evolution Diagnostics, Inc. v. United States*, 162 Fed. Cl. 73, 76 (2022).

First, the Court should dismiss the direct-infringement allegations for all the Asserted Patents. Under the law in this District, "[t]o state a claim for direct infringement, a plaintiff must ***explicitly plead facts*** to plausibly support the assertion that a defendant 'without authority makes, uses, offers to sell, or sells any patented invention during the term of the patent.'" *Opticurrent, LLC v. Power Integrations, Inc.*, No. 2:16-CV-325-JRG, 2016 WL 9275395, at *3 (E.D. Tex. Oct. 19, 2016) (quoting 35 U.S.C. § 271(a)) (emphasis added). Diorite does not do so for any of the Asserted Patents, which bleeds into its indirect-infringement allegations (which have their own separate problems). Thus, the Court should dismiss the direct-infringement claims.

Second, the Court should dismiss the indirect-infringement claims for all the Asserted Patents. Both induced and contributory infringement require more than simply a restatement of their elements. Starting with induced infringement, Diorite is missing any factual allegations plausibly alleging specific intent. And in the same vein, its assertions for contributory infringement do not provide any facts to support their conclusions that the accused products have no substantial non-infringing uses and were especially made/adapted for infringement. Because Diorite fails to even try to meet the pleading standard, the Court should dismiss the indirect-infringement allegations in their entirety.

## A.    Diorite does not plausibly plead infringement of the '421 Patent.

Diorite fails to plausibly allege infringement for each limitation of the '421 Patent. The '421 Patent, titled "Conference Call User Interface and Methods Thereof," is directed to "a simple teleconferencing solution that allows a user to establish a conference as well as an individual conversation." *See* Dkt. 16-3 at Title, Abstract. Diorite claims that the Cisco Desk using Cisco Webex software, and in the Amended Complaint the Cisco Desk Mini and Cisco Desk Pro, are

products that allegedly infringe at least claim 1 of the '421 Patent. Dkt. 16 ¶ 18. Diorite once again attaches a claim chart that purportedly shows this as Exhibit 4 to the Amended Complaint. *See* Dkt. 16-4. Exhibit 4, however, does little to prove Diorite's point.

      **1.**        **Claim 1 requires the display of distinct graphical user interface elements.**

Claim 1, as detailed below, is directed to an apparatus that is required to display a user interface having very specific graphical elements and features. Claim limitations [1.4] and [1.5] require (1) first displaying graphics representing a **plurality of characters** and **the claimed apparatus**; and (2) then displaying **phone icons _on_** the **plurality of characters** and **the claimed apparatus**.

> [1.0] An apparatus comprising:
>
> [1.1] a touch display;
>
> [1.2] at least one processor;
>
> [1.3] a memory operatively coupled to said processor, said memory storing program instructions that when executed by said processor, causes said processor to:
>
> [1.4] display graphics representing a **plurality of characters** and **said apparatus** on a user interface provided on said touch display;
>
> [1.5] display **phone icons** on said **plurality of characters** and **said apparatus**; . . .

Dkt. 16-3 at 10:5–29. Figure 3 of the '421 Patent shows this first specific user interface display of **phone icons 320** on the graphical representation of **characters 306** and the **representative collaboration appliance (i.e., apparatus) 310**. *Id.* at 5:13–6:12.



FIG. 3

*Id.* at FIG. 3 (annotations added). Claim 1 continues, as shown below, and requires the display of additional graphical elements after the **phone icons** are actuated: limitation [1.6] requires for one of the devices to be connected when the phone icons are actuated; limitation [1.7] then requires associating one of the characters to the connected device; and limitation [1.8] finally requires that the character of the connected device is displayed with **an identifier of the device**, and a **participant panel** that displays each of an **"End Call," "Hold," and "Escalate to Video," and a "De-escalate from Video" option.**

> [1.6] connect with at least one **device** through said **phone icons** when said **phone icons** are actuated using said touch display;
>
> [1.7] associate said at least one **device** with a **character** of said **plurality of characters**;
>
> [1.8] display said **character** with **an identifier of said at least one device** on said user interface provided on said touch display, wherein connecting with said at least one **device** through said **phone icons** when said **phone icons** are actuated using said touch display comprises displaying a **participant panel associated with said character having an "End Call" option, a "Hold" option, an "Escalate to Video" option, and a "De-escalate from Video"**

6

**option** facilitating said connection.

Figure 5 of the '421 Patent shows the claimed user interface that is required to be displayed after a user actuates one of the phone icons; i.e., both **a device identifier 504** and a **participant panel 502 having an "End Call" option 512, a "Hold" option 508, an "Escalate to Video" option 510, and a "De-escalate from Video" option 514** are displayed with an associated **character 304**. *Id.* at 6:56–64.



FIG. 5

*Id.* at FIG. 5 (annotations added).

### 2.    Diorite's allegations are cursory and contradict infringement.

Diorite's claim chart is cursory and does not plausibly allege the existence of the required user interface elements and functionality that claim 1 requires. For limitation [1.5], for example, Diorite cursorily asserts that "[e]ach Accused Product displays phone icons on said plurality of characters and said apparatus." Dkt. 16-4 at 12. In the amended claim chart for the '421 Patent, Diorite swaps the originally presented irrelevant screenshot (Dkt. 1-4 at 5) with a screenshot "[c]aptured during a live Webex session" and three articles purportedly demonstrating limitation

7

[1.5]. Dkt. 16-4 at 13–15. The amended screenshots still do not plausibly infer the existence of the claimed requirements, including the one below:



Captured during live Webex session, Sep. 1, 2025, edited for privacy.

Dkt. 16-4 at 14. As is evident in amended screenshot above, these alleged "phone icons" are not plausibly **phone** icons, nor are they displayed **on** any of the characters or any representation of the user's apparatus, as required by claim 1. Thus, Diorite's amended allegations are still inconsistent with and contradict infringement. *See, e.g.*, *Bot M8 LLC v. Sony Corp. of Am.*, 4 F.4th 1342, 1354 (Fed. Cir. 2021) ("Where, as here, the factual allegations are actually *inconsistent* with and contradict infringement, they are likewise insufficient to state a plausible claim."); *see also* *Qwikcash, LLC v. Blackhawk Network Holdings, Inc.*, No. 4:19-CV-876-SDJ, 2020 WL 6781566, at *4 (E.D. Tex. Nov. 17, 2020) ("Qwikcash has pleaded itself out of court by presenting factual

8

assertions that are implausible on their face and thus require dismissal."); *Heidary*, 2024 WL 4489918, at \*3–4. Indeed, consistent with the plain claim language of limitation [1.5], during the prosecution[1] of the '421 Patent, Diorite distinguished the Lovehaugen[2] prior art reference from the claims on the basis that "in LOVHAUGEN there is a single icon associated with all eligible participants - not one associated with each image personification" as required by the claims. Padmanabhan Decl., Ex. A at 25 (emphasis in original).

As another example, the screenshots excerpted to purportedly satisfy limitation [1.8] are contradicted by the plain claim language. Limitation [1.8] requires the display of a "participant panel associated with said character having an 'End Call' option, a 'Hold' option, an 'Escalate to Video' option, and a 'De-escalate from Video' option facilitating said connection." Dkt. 16-3 at 10:20–28. Diorite's amended allegations for limitation [1.8] are implausible. First, the plain claim language requires a single 'participant panel" that displays all four of these options. *Id.* But Diorite relies on disparate and unrelated portions of the Webex user interface to allegedly show this "participant panel." For example, Diorite alleges that the "Hold" option in the participant panel is the "Step away from Meeting" button, which is displayed by selecting the "…" button in the bottom panel of the Webex user interface. Dkt. 16-4 at 28.

---

[1] The prosecution history of the '421 Patent is a matter of public record and subject to judicial notice under Fed. R. Civ. P. 201. See *UltimatePointer, L.L.C. v. LG Elecs., Inc.*, No. 2:22-CV-00406-JRG, 2023 WL 5511520, at \*3 (E.D. Tex. Aug. 25, 2023). Moreover, the prosecution history of the patent is amenable to consideration on a motion to dismiss. *See Amgen Inc. v. Coherus BioSciences, Inc.*, 931 F.3d 1154, 1156 (Fed. Cir. 2019).

[2] U.S. Patent No. 2010/00734554.



*Id.* at 29. Diorite now contradictorily alleges that that the claimed "End Call" option is the "Red X Circle" in the participant panel. *Id.* at 28. But Diroite previously identified the "Red X Circle" as a "phone icon" for limitation [1.5]. Dkt. 16-4 at 14 (screen shot shown above). The "Red X Circle" however, cannot be both the "phone icon" and "End Call" option because limitation [1.8] requires "displaying a participant panel…having an 'End Call' option" "***when said phone icons are actuated***." Dkt. 16-3 at 10:20–28 (emphasis added). Moreover, the "Red X Circle" (alleged "End Call" option) and "Step away from Meeting" button (alleged "Hold" option) are not displayed on a singular panel. Further, now Diorite alleges that a "move meeting to device" button is the alleged "Escalate to Video" option of the "participant panel." *Id.*



*Id.* at 31. But again, there is no display of this "Move meeting to device" button with either of the "Red X Circle" (alleged "End Call" option) and "Step away from Meeting" button (alleged "Hold" option) options in the same panel. Likewise, Diorite alleges that a "Stop Video" button is allegedly the claimed "De-escalate from Video" option, but this "Stop Video" button is also not displayed in the same panel as any of the other alleged claimed options as required by the claim. *Id.* at 28.

11



*Id.* at 36. Further, Diorite fails to plausibly allege that any of these alleged options are tied to a "participant panel ***associated with said character***" as required by claim 1. Importantly, Diorite distinguished the prior art on this very basis in prosecution to obtain allowance of the claims. Padmanabhan Decl., Ex. A, at 26 (in a May 13, 2014 amendment arguing "Claim 9 has been amended similar to claim 1, to clarify that the displayed participant panel is 'associated with said character'. Neither LOVHAUGEN nor Mehin disclose 'displaying a participant panel <u>associated with said character</u> having an "End Call" option, a "Hold" option, an "Escalate to Video" option, and a "De-escalate from Video" option facilitating said connection.'") (emphasis in original), 30 (subsequent July 9, 2014 Office Action, stating "Claims 9-14 are allowed.") For example, neither of the alleged "End Call," "Hold," or "Escalate to Video" options (i.e., the "Red X Circle," the "Step away from Meeting," or "Move meeting to device" buttons, respectively) are associated with a particular conference participant, instead they are generic menu options for a user's interaction with an entire conference.

Accordingly, Diorite's implausible direct-infringement allegations for the '421 Patent fail to put Cisco on notice and must be dismissed.

**B.      Diorite's infringement allegations for the '820 Patent are also implausible.**

Diorite's direct-infringement allegations for the '820 Patent fail for at least two reasons. First, Diorite fails to plausibly allege that each accused product directly infringes system claim 1, which requires multiple computing devices. Second, Diorite's allegations that the claimed requirement of "perform[ing] diagnostics on . . . one of said plurality of speakers" are cursory, unsupported, and contradictory.

**1.      The accused products cannot plausibly be the claimed "mass audio notification *system*."**

Diorite's infringement allegations for claim 1 of the '820 Patent are implausible. The '820 Patent—titled "Method, Apparatus, and System for Mass Audio Notification Field"—is directed to a "**mass audio notification system**" 100 where a "**MNMC 105 [which] is a server**" is "interconnected with **a plurality of speakers** 110-1, 110-2, . . . , 110-$n$ . . . ***via a network 115***." Dkt. 16-5 at 2:47–57. "MNMC 105 . . . receives instructions from the client devices 120 to broadcast audio messages to the speakers 110." *Id.* at 2:63–65; Fig. 1 (shown below with annotations).



Claim 1, as shown below, is directed to this mass audio notification system and comprises multiple computing components, including a server and a plurality of speakers that are each separately connected to the server over the internet through distinct linkages.

[1.0] **A mass audio notification system** for use in an internet protocol network, the system comprising:

[1.1] **a plurality of speakers** connected to said internet protocol network, each **speaker** in said **plurality of speakers** comprising a transport manager and a diagnostic application;

[1.2] a **server** connected to said internet protocol network, said **server** configured to send audio data to one of said **plurality of speakers** via a transport link, said **server** further configured to send control commands to one of said **plurality of speakers** via a signalling link, said signaling link including a second protocol based on internet protocol;

[1.3] wherein said transport link is managed by said transport manager corresponding to one of said **plurality of speakers**, and wherein said transport link includes a first protocol based on internet protocol; and

[1.4] wherein said audio data is received by said transport manager; and

[1.5] wherein each diagnostic application corresponding to each of said **plurality of speakers** performs diagnostics on a corresponding one of said **plurality of speakers**, said **server** receiving status messages from said one of said **plurality of speakers** via a low level status link, said

14

low level status link including a third protocol based on internet protocol; and wherein said at least one of said **plurality of speakers** comprises a low level status manager;

[1.6] said low level status link being managed by said low level status manager;

[1.7] said low level status manager performing diagnostics on said one **speaker**, each diagnostic application and said low level status manager generating a diagnostic report based on performed diagnostics, said diagnostics reports are transmitted to said **server** over said signaling link and said low level status link.

*Id.* at 12:41–13:8. The plain language of claim 1 requires each of the speakers to be independently connected to the server over the internet through distinct linkages. For example, "each speaker in said plurality of speakers compris[es] *a transport manager*." *Id.* at 12:44–45 (emphasis added). The server "send[s] audio data to *one of said plurality of speakers* via *a transport link*," and "said *transport link* is managed by *said transport manager* corresponding to *one of said plurality of speakers*, and wherein said transport link includes a first protocol based on internet protocol." *Id.* at 12:46–56. Likewise, claim 1 requires that the "server . . . send[s] control commands to *one of said plurality of speakers* via a signalling link" and "receiv[es] status messages from *said one of said plurality of speakers* via a low level status link." *Id.* at 12:46–67 (emphases added).

Diorite identifies "Webex and Webex Calling, including…Cisco products that support Webex and Webex Calling" such as "Cisco Desk devices including the Cisco Desk Mini, Cisco Desk, and Cisco Desk Pro, and Cisco IP Phones" as Accused Products. Dkt. 16-6 at 1. Despite the indisputable requirement for the mass audio notification system of claim 1 to comprise a server and a plurality of speakers that are independently connected to the server over the internet, Diorite alleges that "each" of the Accused Products, where it identifies individual computing devices (e.g., the Cisco Desk and Cisco IP Phones) as examples of Accused Products, includes every required component of the claimed system. *See* Dkt. 16-6 at 1 ("[E]ach Accused Product is a mass audio notification system."), 8 ("Each Accused Product comprises a plurality of speakers."), 17 ("Each

15

Accused Product comprises a server."). These allegations are thus implausible and do not adequately set forth a claim of direct infringement. *See Heidary*, 2024 WL 4489918, at *4 (affirming dismissal of direct-infringement allegations where "[t]he '862 patent claims a fire protection system, but the accused devices are merely a single component of that system"); *see also F2VS Techs., LLC v. Aruba Networks, Inc.*, No. 17-CV-0754, 2018 WL 1732152, at *2 (D. Del. Apr. 10, 2018) (dismissing direct-infringement allegations where the "asserted claims . . . are directed to a wireless network comprising a group of wireless network nodes and one or more gateways," and accused products were only "routers," explaining that "[t]hough a router may be an essential part of a network, I do not think it is plausible to claim that a router itself is a network"). Diorite's amendment of the chart's preamble to include more accused products does not alleviate this deficiency, as the accused products are still individual computing devices. *See* Dkt. 16-6 at 2.

### 2.    Diorite fails to plausibly allege infringement of limitations [1.5] and [1.7].

Limitations [1.5] and [1.7] of claim 1 both require performing diagnostics ***on a speaker***. Limitation [1.5] requires that "each diagnostic application corresponding to each of said plurality of speakers ***performs diagnostics on a corresponding one of said plurality of speakers***," and limitation [1.7] requires a "low level status manager ***performing diagnostics on said one speaker***." Dkt. 16-5 at 12:59–67, 13:3–8 (emphases added). For these limitations (just like the other limitations of claim 1 of the '820 Patent), Diorite merely parrots the claim language and excerpts screenshots with no substantive explanation, which is insufficient. *Chapterhouse, LLC v. Shopify, Inc.*, No. 2:18-CV-300-JRG, 2018 WL 6981828, at *2 (E.D. Tex. Dec. 11, 2018); *NorthStar Sys.*, 2023 WL 5723648, at *3; *Encoditech, LLC v. Citizen Watch Co. of Am., Inc.*, No. SA-18-CV-1335-XR, 2019 WL 2601347, at *3 (W.D. Tex. June 25, 2019). Diorite's cursory parenthetical added for limitation [1.5] and limitation [1.7] do not adequately remedy this deficiency. *See* Dkt. 16-6 at 28, 37. Aside from these two additional paragraphs which highlight the deficiency

discussed below, Diorite includes only one additional screenshot in the amended chart, which replicates the deficiencies identified in the initial motion to dismiss. *See* Dkt. 16-6 at 30.

Specifically, the factual matter excerpted by Diorite as allegedly supporting its allegations for limitations [1.5] and [1.7] is still inconsistent with and contradicts infringement. *See, e.g.*, *Bot M8*, 4 F.4th at 1354; *see also Qwikcash*, 2020 WL 6781566, at \*4; *Heidary*, 2024 WL 4489918, at \*3–4. Diorite exclusively excerpts screenshots pertaining to techniques for performing diagnostics of a network connection (such as through the use of the Real-time Transport Control Protocol ("RTCP")). *See e.g.,* Dkt. 16-6 at 39 ("If you're having connection issues, you can use the diagnostics tool to identify configuration errors or export a network diagnostics report."), 35 ("Cisco collaboration devices have built-in bandwidth management capabilities that allow a network administrator to control maximum bandwidth usage."). In contrast, as explained by the '820 Patent, performing diagnostics on a speaker involves "verifying that the speaker 110 is operating properly," such as by performing "an audio self-test." Dkt. 16-5 at 9:20–34. Diorite does not and cannot explain how performing diagnostics of a network meets the claimed requirement of ***performing diagnostics <u>on a speaker</u>***.

Accordingly, Diorite's implausible direct-infringement allegations for the '820 Patent fail to put Cisco on notice and must be dismissed.

**C.    Diorite fails to plausibly allege that Cisco infringes the '759 Patent.**

Diorite also leaves glaring holes in its allegations for direct infringement of the '759 Patent. As an initial matter, just like Diorite does with the other Asserted Patents, Diorite's claim chart that purportedly sets forth how the accused products[3] infringe merely parrots the claim language

---

[3] Diorite alleges that claim 1 of the '759 Patent is infringed by "Cisco Broadworks products such as the Desk Phone 9800 Series." Dkt. 16 ¶ 10.

for each limitation, excerpting the same few screenshots for limitations having different requirements, without providing any explanation. *See* Dkt. 16-2. This is insufficient. *NorthStar Sys.*, 2023 WL 5723648, at *3; *see also Chapterhouse*, 2018 WL 6981828, at *2. Diorite only cursorily attempts to address this deficiency for limitation [1.4]—the only limitation updated in the amended claim chart. *See* Dkt. 16-2 at 7–10.

The factual matter excerpted by Diorite's claim chart is inconsistent with and contradicts infringement. *See, e.g.*, *Bot M8*, 4 F.4th at 1354; *see also Qwikcash*, 2020 WL 6781566, at *4; *Heidary*, 2024 WL 4489918, at *3–4. The '759 Patent, which is titled "System and Method for Automatic Call Back Using Availability Information," is directed to determining and evaluating the "availability status of the called party" to "control[] execution of a call back to a called party." *See* Dkt. 16-1 at Title, Abstract. The '759 Patent purports to improve conventional "Automatic Callback" ("ACB") systems where "a caller presented with a busy or no answer condition can request that a call to the busy called party be initiated the next time the called party is available at his/her telephone." Dkt. 16-1 at 1:16–21. The '759 Patent says that "traditional ACB" approaches have drawbacks because they rely on only "coarse" availability data, "i.e., on-hook, off-hook, DND, call forward," for initiating callback. *Id.* at 1:28–41, 4:19–24. The '759 Patent explains that it improves traditional ACB systems by using availability information from a "presence server," in addition to this conventional "coarse" availability data, for initiating callback. *Id.* at 4:11–41. Method claim 1, shown below, reflects this purported improvement, as it requires consideration of both (i) availability information received from a presence server (limitations [1.4] and [1.5]) and (ii) the "coarse" availability features in traditional ACB systems—"DO NOT DISTURB and CALL FORWARD ALWAYS to voice mail" (limitation [1.8]]:

[1.0] A method for controlling execution of a call back to a called party,

18

comprising:

[1.1] initiating a call attempt from a first device to a second device of said called party

[1.2] determining that said call attempt failed;

[1.3] setting an automatic call back feature in a call controller;

[1.4] monitoring a status of said called party at a **presence server**;

[1.5] determining an availability status of said called party at said call controller by receiving, from said **presence server** at predetermined intervals, one or more status messages indicative of said called party's availability status;

[1.6] evaluating compatibility of said availability status by comparing said received status messages to a list of compatible availability states for which said called party is available to answer an incoming call;

[1.7] further determining said availability status of said called party at said call controller by evaluating compatibility of a call feature selected by said called party for said second device for availability to answer said incoming call;

[1.8] wherein the determining, said availability status comprises evaluating the certain types of feature including DO NOT DISTURB and CALL FORWARD ALWAYS to voice mail is compatible with said availability; and

[1.9] in the event said availability status is compatible with said certain types of feature and said called party accepting said incoming call, then initiating said call back to said called party.

*Id.* at 5:56–6:18 (emphases added).

Diorite fails to point to any factual matter that reasonably infers that Cisco's products use information from a presence server in automatic callback initiation. Across all ten limitations, the claim chart cites only five different excerpts from a 118-page "Cisco BroadWorks Feature Overview" document[4] that details hundreds of different BroadWorks features.

For limitation [1.4], which requires "monitoring a status of said called party at *a presence*

---

[4] Cisco BroadWorks Feature Overview All Releases (updated Aug. 27, 2024), https://www.cisco.com/c/en/us/td/docs/voice_ip_comm/broadworks/Releases/All-Releases/Feature_Overview_All_Releases/cisco-broadworks-feature-overview-all-releases/features.html.

*server*," Diorite now additionally relies on excerpts from a MMTEL CCBS standards document called "TS 24.642" in addition to an excerpt from the Cisco BroadWorks Feature Overviews document, followed by several vague logical assertions. Dkt. 16-2 at 6–9. However, Diorite's allegations for limitation [1.4] are implausible. First, Diorite fails to allege whether (and how) compliance with the 3GPP CCBS standard mandates that the accused products practice limitation [1.4].[5] Instead, for example, Diorite merely alleges that 3GPP CCBS merely "***calls*** for the presence of an application server," but nowhere alleges (or explains) that one is required, or how using one necessarily meets the requirements of limitation [1.4]. Dkt. 16-2 at 8–9 (emphasis added). This is fatal. *See Stragent, LLC v. BMW of N. Am., LLC*, No. 6:16-CV-446-RWS-KNM, 2017 WL 2821697, at *5 (E.D. Tex. Mar. 3, 2017) (dismissing direct-infringement allegations premised on alleged compliance with an industry standard where the complaint "adduced no facts suggesting that the asserted claims "cover every possible implementation of [the industry standard]," and merely alleged that the accused products "***addressed***" the industry standard) (emphasis added).

Furthermore, Diorite fails to allege what in the Accused Products is the claimed "presence server." *Id.* Diorite's vague reference to an "Application server" in the MMTEL CCBS standard documents functioning as either a "SIP' Proxy' or a 'B2BUA'" (or "back-to-back" user agent) is not relevant. Indeed, the specification says that "User Agents" and "Proxies" are not a "presence server." Dkt. 1-1, 4:22–28 ("Chris feature status may be ***obtained from the presence server 180 or*** by using a transaction protocol ***on the proxy or UA*** supporting him.").

Furthermore, for limitation [1.5], which requires "determining an availability status of said called party at said call controller by receiving, from ***said presence server*** at predetermined

---

[5] Indeed, Diorite's claim chart excerpts portions of the MMTEL CCBS that are merely "informative," and thus facially not mandatory. Dkt. 16-2 at 8.

intervals, one or more status messages indicative of said called party's availability status," Diorite excerpts the following descriptions of BroadWorks's ACB features that highlight the deficiencies present for limitation [1.4]:

| Automatic Callback | pre-Release 14.0 | | AS, XS | Enables users who receive a busy condition to monitor the busy party and automatically establish a call when the busy party becomes available. This service can only be activated when calling within the same group. |
|---|---|---|---|---|
| Automatic Callback Enhancements (Release 15.0) | 15.0 | | AS, XS | This feature enhances the Automatic Callback (ACB) feature so that it is compliant with the MMTEL Completion of Communications to Busy Subscribers (CCBS) service. |
| Automatic Callback Enhancements (Release 17.0) | 17.0 | | AS, XS | This activity adds two enhancements to the Automatic Callback Polling functionality: <br><br> • **Provisionable SIP Status Codes** – Prior to the delivery of this feature, the Automatic Callback (ACB) functionality triggered on status codes other than 486 (Busy Here) and 600 (Busy Everywhere). For instance, the 480 (Temporarily Unavailable) and 606 (Not Acceptable) status codes triggered the service. This feature changes this functionality to make the list of these status codes configurable. In this way, a customer can limit the Session Interface Protocol (SIP) status codes that trigger this feature. <br><br> • **Provisionable Activation Digit** – The initial implementation of this feature ensures ACB is only triggered by the subscriber entering a "1" when prompted to activate the Automatic Callback feature. This enhancement of this feature makes this digit (prompt and value entered) configurable. |
| Automatic Callback Polling Enhancements | 16.0 | | AS, XS | This feature consists of enhancing the existing Automatic Callback (ACB) feature by introducing a new callback method for users who are not necessarily Cisco BroadWorks users. |

*Id.* at 7. Again, the claim chart provides no corresponding explanation about how the excerpted factual matter meets the requirements of the claims. Further, this screenshot is also solely relied on to purportedly demonstrate limitations [1.1], [1.2], [1.3], and [1.6]. *See* Dkt. 16-2 at 4–6, 12. Similar to limitation [1.4], the screenshot is present without explanation highlighting the deficiency across multiple limitations.

Because the requirement of using availability information from a presence server is material to the alleged novelty of the '759 Patent, there is a heightened pleading requirement for infringement of these limitations, which Diorite's unsupported and contradictory allegations clearly do not meet. *See Bot M8*, 4 F.4th at 1353 ("The level of detail required in any given case will vary depending on a number of factors, including . . . the ***materiality*** of any given element to practicing the asserted claim(s)." (emphasis added)); *see also Vervain, LLC v. Micron Tech., Inc.*,

21

No. 6:21-CV-487-ADA, 2022 WL 23469, at *5 (W.D. Tex. Jan. 3, 2022) ("In cases involving complex technology, a complaint nakedly alleging that the accused product practices the claimed invention's *point of novelty* will rarely suffice." (emphasis added)).

Accordingly, Diorite's implausible direct-infringement allegations for the '759 Patent fail to put Cisco on notice and must be dismissed.

## D.    Diorite's indirect-infringement allegations fare no better.

A plausible allegation of direct infringement is a prerequisite to plead indirect infringement. *See In re Bill of Lading*, 681 F.3d 1323, 1333 (Fed. Cir. 2012). As discussed above, Diorite cannot plausibly plead direct infringement, and therefore its indirect allegations must also fail. But even assuming plausible allegations for direct infringement, Diorite's indirect claims must fail for a separate reason—Diorite pleads no factual allegations to support its conclusory assertions regarding the elements of induced and contributory infringement. Diorite offers mere bare-bones allegations for both induced and contributory infringement for each of the Asserted Patents. Dkt. 16 ¶¶ 11–12 (allegations for the '759 Patent), 19–20 (allegations for the '421 Patent), 27–28 (allegations for the '820 Patent). Instead of including any facts to underpin these assertions, Diorite "merely repeats the exact language from the statute," which is unmistakable grounds for dismissal. *Nobelbiz, Inc. v. Insidesales.com, Inc.*, No. 6:13-CV-360-MHS, 2014 WL 12378804, at *4 (E.D. Tex. Oct. 14, 2014).

### 1.    For induced infringement, Diorite fails to offer any factual allegations.

Induced infringement requires both knowledge and specific intent. *Id.* Therefore, for a complaint to contain plausible allegations for induced infringement, it "must contain *facts* plausibly showing that defendant specifically intended another to infringe the patent." *Id.* (internal quotation omitted) (emphasis added). Diorite, however, simply concludes that Cisco acted with "specific intent" without any supporting facts. Its only "fact" is a boilerplate claim that Cisco

22

provides instructional materials. Dkt. 16 ¶¶ 11, 19, 27. This is exactly the type of conclusory claim that a court in this district struck down in *Core Wireless*, explaining that "generic allegations that an alleged infringer provides instructional materials along with the accused products, without more, are insufficient to create a reasonable inference of specific intent for the purposes of an induced infringement claim." *Core Wireless Licensing S.A.R.L. v. Apple Inc.*, No. 6:14-CV-752-JRG-JDL, 2015 WL 4910427, at *4 (E.D. Tex. Aug. 14, 2015) (Gilstrap, J.).

Because Diorite's only assertions of specific intent are that Cisco "encouraged end-users to infringe by publishing manuals that instruct the end-users on how to infringe," which are just "arguments" instead of the required "corresponding factual allegations," its induced-infringement claim should be dismissed. *NorthStar*, 2023 WL 5723648, at *3.

**2.     The same is true for Diorite's contributory-infringement allegations, also requiring dismissal.**

Pleading contributory infringement requires—in addition to knowledge—plausible allegations (including facts) that the accused product has "no substantial non-infringing uses" and is "especially made or especially adapted for use" in infringement. *See Core Wireless*, 2015 WL 4910427, at *5. Diorite provides no such facts, which means its claims for contributory infringement must also be dismissed. *Id.* at *5.

## VI.     CONCLUSION

For the foregoing reasons, Cisco respectfully requests that the Court dismiss Diorite's Amended Complaint (Dkt. 16) in its entirety with prejudice for failure to state a claim.

Dated: September 19, 2025

Respectfully submitted,

/s/ *Krishnan Padmanabhan*

**Krishnan Padmanabhan** (*pro hac vice*)
CA State Bar No. 254220
KPadmanabhan@winston.com
**Christopher T. Gresalfi** (*pro hac vice*)
NY State Bar No. 5472121
CGresalfi@winston.com
**WINSTON & STRAWN LLP**
200 Park Ave.
New York, NY 10166
Telephone: (212) 294-6700
Facsimile: (212) 294-4700

**Ahtoosa A. Dale**
TX State Bar No. 24101443
ADale@winston.com
**WINSTON & STRAWN LLP**
2121 N. Pearl St., Suite 900
Dallas, TX 75201
Telephone: (214) 453-6500
Facsimile: (214) 453-6400

**David Enzminger** (*pro hac vice*)
CA State Bar No. 137065
DEnzminger@winston.com
**WINSTON & STRAWN LLP**
333 S. Grand Ave.
Los Angeles, CA 90071
Telephone: (213) 615-1700
Facsimile: (213) 615-1750

**Shaun W. Hassett**
TX State Bar No. 24074372
shaunhassett@potterminton.com
**POTTER MINTON, P.C.**
102 N. College Ave., Suite 900
Tyler, TX 75702
Tel: (903) 597-8311
Fax: (903) 531-3972

***Attorneys for Defendant Cisco Systems, Inc.***

24

## CERTIFICATE OF SERVICE

The undersigned attorney certifies that a copy of the foregoing document was filed via ECF and served on all counsel of record by ECF on September 19, 2025.

*/s/ Krishnan Padmanabhan*
Krishnan Padmanabhan

25