FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | |
|---|---|
| DIORITE TECHNOLOGY, LLC,<br><br>Plaintiff,<br><br>v.<br><br>CISCO SYSTEMS, INC.<br><br>Defendant. | Civil No. 2:25-cv-00591-RWS-RSP<br><br>**JURY TRIAL DEMANDED**<br><br>**FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER** |

**ANSWER OF DEFENDANT CISCO SYSTEMS, INC. TO**
**FIRST AMENDED COMPLAINT FOR PATENT INFRINGEMENT**

Defendant Cisco Systems, Inc. ("Cisco") hereby answers plaintiff Diorite Technology, LLC's ("Diorite") First Amended Complaint (the "FAC") and demand for jury trial for alleged patent infringement of claims of U.S. Patent No. 8,189,759 (the "'759 Patent"),[1] U.S. Patent No. 9,007,421 (the "'421 Patent"), and U.S. Patent No. 9,344,820 (the "'820 Patent") (collectively, the "Asserted Patents"), as follows:

Cisco denies all allegations in the FAC, whether express or implied, that are not specifically admitted below. Any factual allegation below is admitted only as to the specific admitted facts and not as to any purported conclusions, characterizations, implications, or speculations that may arguably follow from the admitted fact(s). Cisco further denies that Diorite is entitled to the relief requested in the FAC, or to any other relief.

[1] Diorite dismissed its allegations with respect to the '759 patent. (Dkt. 39, Joint Report Regarding Case Status, ¶ 4 (E.D. Tex. May 8, 2026).)

## PLAINTIFF DIORITE AND THE PATENTS-IN-SUIT

1. Plaintiff Diorite Technology, LLC is a limited liability company organized under the laws of the State of Texas, with an address at 6800 Weiskopf Ave., Suite 150, McKinney, Texas 75070.

**ANSWER:** Cisco lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of paragraph 1 of the FAC and, on that basis, denies them.

2. Defendant Cisco Systems, Inc. is a corporation organized under the laws of the State of Delaware, with its principal place of business at 170 West Tasman Drive, San Jose, California 95134. Cisco has as its registered agent for service: Corporation Service Company dba CSC – Lawyers Incorporating Service Company, 211 E. 7th Street, Suite 620, Austin TX 78701. Cisco has been registered to do business in the state of Texas under Texas SOS file number 8243306.

**ANSWER**: The allegations in this paragraph state a legal conclusion to which no response is required. To the extent a response is deemed required, Cisco admits that it is a corporation organized under the laws of the State of Delaware, with its principal place of business at 170 West Tasman Drive, San Jose, California 95134. Cisco further admits that it is registered to do business in the State of Texas and that its registered agent in Texas is Corporation Service Company dba CSC – Lawyers Incorporating Service Company, 211 E. 7th Street, Suite 620, Austin, Texas 78701. Except as expressly admitted, Cisco denies the remaining allegations of paragraph 2 of the FAC.

**JURISDICTION AND VENUE**

3. This action arises under the patent laws of the United States, Title 35 of the United States Code. This Court has original subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a).

**ANSWER**: The allegations in this paragraph state a legal conclusion to which no response is required. To the extent a response is deemed required, Cisco admits that the FAC purports to allege an action arising under the patent laws of the United States, Title 35 of the United States Code, but denies that the allegations have any merit or that Diorite is entitled to any relief. Cisco admits that this Court has subject matter jurisdiction over claims for patent infringement brought by the owner or exclusive licensee of a patent pursuant to 28 U.S.C. §§ 1331 and 1338(a).

4. This Court has personal jurisdiction over Cisco in this action because Cisco has committed acts of infringement within this District giving rise to this action, has a regular and established place of business in this District, and has established minimum contacts with this forum such that the exercise of jurisdiction over Cisco would not offend traditional notions of fair play and substantial justice. Cisco, directly and/or through subsidiaries or intermediaries, conducts its business extensively throughout Texas, by shipping, distributing, offering for sale, selling, and advertising its products and/or services in the State of Texas and the Eastern District of Texas, regularly does business or solicits business, engages in other persistent courses of conduct, and/or derives substantial revenue from products and/or services provided to individuals in the State of Texas, and commits acts of infringement of Plaintiff's Patent in this District by, among other things, making, using, importing, offering to sell, and selling products and/or services that infringe the Asserted Patents, including without limitation the Cisco Desk and Cisco Broadworks products accused of infringement in this case offered by Cisco.

**ANSWER**: The allegations in this paragraph state a legal conclusion to which no response is required. To the extent a response is deemed required, Cisco admits that this Court has personal jurisdiction over Cisco. Cisco denies that it has committed or is committing any acts of infringement anywhere, including in this District, and denies that any Cisco product or service, including the Cisco Desk and Cisco BroadWorks products, infringes any Asserted Patent. Except as expressly admitted, Cisco denies the remaining allegations of paragraph 4 of the FAC.

5. Cisco, directly and/or through subsidiaries or intermediaries, has purposefully and voluntarily placed one or more products and/or services in the stream of commerce that practice the Asserted Patents with the intention and expectation that they will be purchased and used by consumers in the Eastern District of Texas. These products and/or services have been and continue to be purchased and used in the Eastern District of Texas.

**ANSWER**: Cisco denies that it has committed or is committing any acts of infringement and denies that any of its products or services practice the Asserted Patents. Cisco denies the remaining allegations of paragraph 5 of the FAC.

6. Venue as to Cisco is proper in this District under 28 U.S.C. §§ 1391 and 1400(b). On information and belief, Cisco resides in this District and/or has committed acts of infringement and has a regular and established place of business in this District.

**ANSWER**: The allegations in this paragraph state a legal conclusion to which no response is required. To the extent a response is deemed required, Cisco does not contest, for purposes of this action only, that venue is proper in this District under 28 U.S.C. § 1400(b). By not contesting venue, Cisco does not waive any argument that venue is inconvenient in this District or that this action should be transferred to another district for the convenience of the parties and witnesses and in the interest of justice. Cisco denies that it has committed any acts of infringement in this District

or elsewhere. Except as expressly admitted, Cisco denies the remaining allegations of paragraph 6 of the FAC.

7. For example, Cisco has regular and established places of business in the Eastern District of Texas, including at 2250 and 2300 East President George Bush Turnpike, Richardson, Texas b 75082.

**ANSWER**: Cisco admits that it maintains an office in Richardson, Texas, within this District. Except as expressly admitted, Cisco denies the remaining allegations of paragraph 7 of the FAC.

**COUNT 1 - CLAIM FOR INFRINGEMENT OF THE ’759 PATENT**

8. Diorite incorporates by reference each of the allegations in paragraphs 1–7 above and further alleges as follows:

**ANSWER**: Cisco incorporates by reference its responses to paragraphs 1–7 of the FAC as though fully set forth herein.

9. Plaintiff owns by assignment all rights, title, and interest in U.S. Patent No. 8,189,759 (the "’759 Patent"), entitled "System and Method for Automatic Call Back Using Availability Information." The ’759 Patent was duly and legally issued by the United States Patent and Trademark Office on May 29, 2012. A true and correct copy of the ’759 Patent is attached as Exhibit 1.

**ANSWER**: Cisco admits that the ’759 Patent lists "System and Method for Automatic Call Back Using Availability Information" as its title and May 29, 2012 as its issue date. Cisco further admits that Diorite purports to attach a copy of the ’759 Patent to the FAC as Exhibit 1. Cisco lacks knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations of paragraph 9 of the FAC and, on that basis, denies them.

10. On information and belief, Cisco makes, uses, offers for sale, sells, and/or imports certain products ("Accused Instrumentalities"), including VoIP products that use Cisco Broadworks, such as the Desk Phone 9800 Series, that directly infringe, literally and/or under the doctrine of equivalents, at least Claim 1 of the '759 Patent.

**ANSWER**: Cisco denies that it has infringed or is infringing, literally or under the doctrine of equivalents, any claim of the '759 Patent, and specifically denies that any of its products or services, including Cisco BroadWorks and the Cisco Desk Phone 9800 Series, infringe. Cisco denies the remaining allegations of paragraph 10 of the FAC.

11. Cisco also knowingly and intentionally induces infringement of at least Claim 1 of the '759 Patent in violation of 35 U.S.C. § 271(b). Through at least the filing and service of this Complaint, Cisco has had knowledge of the '759 Patent and the infringing nature of the Accused Instrumentalities. Despite this knowledge of the '759 Patent, Cisco continues to actively encourage and instruct its customers and end users (for example, through user manuals and online instruction materials on its website) to use the Accused Instrumentalities in ways that directly infringe the '759 Patent. Cisco does so knowing and intending that its customers and end users will commit these infringing acts. Cisco also continues to make, use, offer for sale, sell, and/or import the Accused Instrumentalities, despite its knowledge of the '759 Patent, thereby specifically intending for and inducing its customers to infringe the '759 Patent through the customers' normal and customary use of the Accused Instrumentalities.

**ANSWER**: To the extent the allegations in paragraph 11 purport to quote or characterize the contents of Cisco user manuals or online instruction materials, the documents speak for themselves. Cisco specifically denies that it has committed or is committing any acts of infringement,

including inducement of infringement under 35 U.S.C. § 271(b). Cisco denies the remaining allegations of paragraph 11 of the FAC.

12. Cisco has also infringed, and continue to infringe, at least Claim 1 of the ’759 Patent by selling, offering for sale, or importing into the United States, the Accused Instrumentalities, knowing that the Accused Instrumentalities constitute a material part of the inventions claimed in the ’759 Patent, are especially made or adapted to infringe the ’759 Patent, and are not staple articles or commodities of commerce suitable for non-infringing use. Cisco has been, and currently is, contributorily infringing the ’759 Patent in violation of 35 U.S.C. §§ 271(c) and (f).

**ANSWER**: Cisco specifically denies that it has committed or is committing any acts of infringement, including under 35 U.S.C. §§ 271(c) and (f). Cisco denies the remaining allegations of paragraph 12 of the FAC.

13. The Accused Instrumentalities satisfy all claim limitations of one or more claims of the ’759 Patent. A claim chart comparing independent claim 1 of the ’759 Patent to representative Accused Instrumentalities is attached as Exhibit 2, which is incorporated herein by reference.

**ANSWER**: To the extent the allegations in paragraph 13 purport to characterize the contents of Exhibit 2 to the FAC, the document speaks for itself. Cisco denies the remaining allegations of paragraph 13 of the FAC.

14. By making, using, offering for sale, selling and/or importing into the United States the Accused Instrumentalities, Cisco has injured Plaintiff and are liable for infringement of the ’759 Patent pursuant to 35 U.S.C. § 271.

**ANSWER**: Cisco denies that it has committed or is committing any acts of infringement. Cisco denies the remaining allegations of paragraph 14 of the FAC.

15. As a result of Cisco's infringement of the '759 Patent, Plaintiff is entitled to monetary damages in an amount adequate to compensate for Cisco's infringement, but in no event less than a reasonable royalty for the use made of the invention by Cisco, together with interest and costs as fixed by the Court.

**ANSWER**: Cisco denies that it has committed or is committing any acts of infringement. Cisco denies the remaining allegations of paragraph 15 of the FAC.

**COUNT 2 - CLAIM FOR INFRINGEMENT OF THE '421 PATENT**

16. Diorite incorporates by reference each of the allegations in paragraphs 1–15 above and further alleges as follows:

**ANSWER**: Cisco incorporates by reference its responses to paragraphs 1–15 of the FAC as though fully set forth herein.

17. Plaintiff owns by assignment all rights, title, and interest in U.S. Patent No. 9,007,421 (the "'421 Patent"), entitled "Conference Call User Interface and Methods Thereof." The '421 Patent was duly and legally issued by the United States Patent and Trademark Office on April 14, 2015. A true and correct copy of the '421 Patent is attached as Exhibit 3.

**ANSWER**: Cisco admits that the '421 Patent lists "Conference Call User Interface and Methods Thereof" as its title and April 14, 2015 as its issue date. Cisco further admits that Diorite purports to attach a copy of the '421 Patent to the FAC as Exhibit 3. Cisco lacks knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations of paragraph 17 of the FAC and, on that basis, denies them.

18. On information and belief, Cisco makes, uses, offers for sale, sells, and/or imports certain products ("Accused Instrumentalities"), including without limitation Cisco Desk, Cisco

Desk Mini, Cisco Desk Pro, that directly infringe, literally and/or under the doctrine of equivalents, at least Claim 1 of the ’421 Patent.

**ANSWER**: Cisco denies that it has infringed or is infringing, literally or under the doctrine of equivalents, any claim of the ’421 Patent, and specifically denies that any of its products or services, including the Cisco Desk, Cisco Desk Mini, and Cisco Desk Pro, infringe. Cisco denies the remaining allegations of paragraph 18 of the FAC.

19. Cisco also knowingly and intentionally induces infringement of at least Claim 1 of the ’421 Patent in violation of 35 U.S.C. § 271(b). Through at least the filing and service of this Complaint, Cisco has had knowledge of the ’421 Patent and the infringing nature of the Accused Instrumentalities. Despite this knowledge of the ’421 Patent, Cisco continues to actively encourage and instruct its customers and end users (for example, through user manuals and online instruction materials on its website) to use the Accused Instrumentalities in ways that directly infringe the ’421 Patent. Cisco does so knowing and intending that its customers and end users will commit these infringing acts. Cisco also continues to make, use, offer for sale, sell, and/or import the Accused Instrumentalities, despite its knowledge of the ’421 Patent, thereby specifically intending for and inducing its customers to infringe the ’421 Patent through the customers’ normal and customary use of the Accused Instrumentalities.

**ANSWER**: To the extent the allegations in paragraph 19 purport to quote or characterize the contents of Cisco user manuals or online instruction materials, the documents speak for themselves. Cisco specifically denies that it has committed or is committing any acts of infringement, including inducement of infringement under 35 U.S.C. § 271(b). Cisco denies the remaining allegations of paragraph 19 of the FAC.

20. Cisco has also infringed, and continue to infringe, at least Claim 1 of the '421 Patent by selling, offering for sale, or importing into the United States, the Accused Instrumentalities, knowing that the Accused Instrumentalities constitute a material part of the inventions claimed in the '421 Patent, are especially made or adapted to infringe the '421 Patent, and are not staple articles or commodities of commerce suitable for non-infringing use. Cisco has been, and currently is, contributorily infringing the '421 Patent in violation of 35 U.S.C. §§ 271(c) and (f).

**ANSWER**: Cisco specifically denies that it has committed or is committing any acts of infringement, including under 35 U.S.C. §§ 271(c) and (f). Cisco denies the remaining allegations of paragraph 20 of the FAC.

21. The Accused Instrumentalities satisfy all claim limitations of one or more claims of the '421 Patent. A claim chart comparing independent claim 1 of the '421 Patent to representative Accused Instrumentalities is attached as Exhibit 4, which is incorporated herein by reference.

**ANSWER**: To the extent the allegations in paragraph 21 purport to characterize the contents of Exhibit 4 to the FAC, the document speaks for itself. Cisco denies the remaining allegations of paragraph 21 of the FAC.

22. By making, using, offering for sale, selling and/or importing into the United States the Accused Instrumentalities, Cisco has injured Plaintiff and are liable for infringement of the '421 Patent pursuant to 35 U.S.C. § 271.

**ANSWER**: Cisco denies that it has committed or is committing any acts of infringement. Cisco denies the remaining allegations of paragraph 22 of the FAC.

23. As a result of Cisco's infringement of the '421 Patent, Plaintiff is entitled to monetary damages in an amount adequate to compensate for Cisco's infringement, but in no event

less than a reasonable royalty for the use made of the invention by Cisco, together with interest and costs as fixed by the Court.

**ANSWER**: Cisco denies that it has committed or is committing any acts of infringement. Cisco denies the remaining allegations of paragraph 23 of the FAC.

**COUNT 3 - CLAIM FOR INFRINGEMENT OF THE ’820 PATENT**

24. Diorite incorporates by reference each of the allegations in paragraphs 1–23 above and further alleges as follows:

**ANSWER**: Cisco incorporates by reference its responses to paragraphs 1–23 of the FAC as though fully set forth herein.

25. Plaintiff owns by assignment all rights, title, and interest in U.S. Patent No. 9,344,820 (the “’820 Patent”), entitled “Method, Apparatus, and System for Mass Audio Notification Field.” The ’820 Patent was duly and legally issued by the United States Patent and Trademark Office on May 17, 2016. A true and correct copy of the ’820 Patent is attached as Exhibit 5.

**ANSWER**: Cisco admits that the ’820 Patent lists “Method, Apparatus, and System for Mass Audio Notification Field” as its title and May 17, 2016 as its issue date. Cisco further admits that Diorite purports to attach a copy of the ’820 Patent to the FAC as Exhibit 5. Cisco lacks knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations of paragraph 25 of the FAC and, on that basis, denies them.

26. On information and belief, Cisco makes, uses, offers for sale, sells, and/or imports certain products (“Accused Instrumentalities”), including Webex and Webex Calling, Cisco products that support Webex and Webex Calling (such as Cisco Desk devices including the Cisco

Desk Mini, Cisco Desk, and Cisco Desk Pro, and Cisco IP Phones), that directly infringe, literally and/or under the doctrine of equivalents, at least Claim 1 of the ’820 Patent.

**ANSWER**: Cisco denies that it has infringed or is infringing, literally or under the doctrine of equivalents, any claim of the ’820 Patent, and specifically denies that any of its products or services, including WebEx, WebEx Calling, the Cisco Desk, Cisco Desk Mini, Cisco Desk Pro, and Cisco IP Phones, infringe. Cisco denies the remaining allegations of paragraph 26 of the FAC.

27. Cisco also knowingly and intentionally induces infringement of at least Claim 1 of the ’820 Patent in violation of 35 U.S.C. § 271(b). Through at least the filing and service of this Complaint, Cisco has had knowledge of the ’820 Patent and the infringing nature of the Accused Instrumentalities. Despite this knowledge of the ’820 Patent, Cisco continues to actively encourage and instruct its customers and end users (for example, through user manuals and online instruction materials on its website) to use the Accused Instrumentalities in ways that directly infringe the ’820 Patent. Cisco does so knowing and intending that its customers and end users will commit these infringing acts. Cisco also continues to make, use, offer for sale, sell, and/or import the Accused Instrumentalities, despite its knowledge of the ’820 Patent, thereby specifically intending for and inducing its customers to infringe the ’820 Patent through the customers’ normal and customary use of the Accused Instrumentalities.

**ANSWER**: To the extent the allegations in paragraph 27 purport to quote or characterize the contents of Cisco user manuals or online instruction materials, the documents speak for themselves. Cisco specifically denies that it has committed or is committing any acts of infringement, including inducement of infringement under 35 U.S.C. § 271(b). Cisco denies the remaining allegations of paragraph 27 of the FAC.

28. Cisco has also infringed, and continue to infringe, at least Claim 1 of the ’820 Patent by selling, offering for sale, or importing into the United States, the Accused Instrumentalities, knowing that the Accused Instrumentalities constitute a material part of the inventions claimed in the ’820 Patent, are especially made or adapted to infringe the ’820 Patent, and are not staple articles or commodities of commerce suitable for non-infringing use. Cisco has been, and currently is, contributorily infringing the ’820 Patent in violation of 35 U.S.C. §§ 271(c) and (f).

**ANSWER**: Cisco specifically denies that it has committed or is committing any acts of infringement, including under 35 U.S.C. §§ 271(c) and (f). Cisco denies the remaining allegations of paragraph 28 of the FAC.

29. The Accused Instrumentalities satisfy all claim limitations of one or more claims of the ’820 Patent. A claim chart comparing independent claim 1 of the ’820 Patent to representative Accused Instrumentalities is attached as Exhibit 6, which is incorporated herein by reference.

**ANSWER**: To the extent the allegations in paragraph 29 purport to characterize the contents of Exhibit 6 to the FAC, the document speaks for itself. Cisco denies the remaining allegations of paragraph 29 of the FAC.

30. By making, using, offering for sale, selling and/or importing into the United States the Accused Instrumentalities, Cisco has injured Plaintiff and are liable for infringement of the ’820 Patent pursuant to 35 U.S.C. § 271.

**ANSWER**: Cisco denies that it has committed or is committing any acts of infringement. Cisco denies the remaining allegations of paragraph 30 of the FAC.

31. As a result of Cisco’s infringement of the ’820 Patent, Plaintiff is entitled to monetary damages in an amount adequate to compensate for Cisco’s infringement, but in no event

less than a reasonable royalty for the use made of the invention by Cisco, together with interest and costs as fixed by the Court.

**ANSWER**: Cisco denies that it has committed or is committing any acts of infringement. Cisco denies the remaining allegations of paragraph 31 of the FAC.

## DIORITE'S ALLEGED DEMAND FOR JURY TRIAL

32. Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Diorite requests a trial by jury of any issues so triable by right.

**ANSWER**: Paragraph 32 of the FAC sets forth Diorite's demand for jury trial, which does not require a response.

## DIORITE'S ALLEGED PRAYER FOR RELIEF

Plaintiff Diorite respectfully requests the following relief from this Court:

A. A judgment in favor of Diorite that Cisco has infringed, either literally and/or under the doctrine of equivalents, the Asserted Patents, and that the Asserted Patents are valid, enforceable, and patent-eligible;

B. A judgment and order requiring Cisco to pay Diorite compensatory damages, costs, expenses, and pre-judgment and post-judgment interest for its infringement of the Asserted Patents, as provided under 35 U.S.C. § 284;

C. Any and all injunctive and/or equitable relief to which Diorite may be entitled including, but not limited to, ongoing royalties with respect to Cisco's infringement of the Asserted Patents;

D. A judgment and order requiring Cisco to provide an accounting and to pay supplemental damages to Diorite, including, without limitation, pre-judgment and post-judgment interest;

E. A judgment and order finding that this case is exceptional under 35 U.S.C. § 285, and an award of Diorite's reasonable attorney's fees and costs; and

F. Any and all other relief to which Diorite may be entitled.

**ANSWER**: Cisco denies that Diorite is entitled to any of the relief requested in the FAC or any relief whatsoever. Cisco denies all allegations in the FAC that have not been specifically admitted in paragraphs 1 through 31 above.

**AFFIRMATIVE AND OTHER DEFENSES**

33. Cisco asserts the following additional defenses to the FAC. In doing so, Cisco does not assume any burden of proof on any issue that is Diorite's burden as a matter of law. Cisco also reserves the right to amend or supplement these defenses as additional facts become known.

**FIRST DEFENSE**
**(Failure to State a Claim)**

34. The FAC, and each purported cause of action therein, fails to state a claim upon which relief may be granted.

**SECOND DEFENSE**
**(Non-Infringement ('759 Patent))**

35. Cisco has not infringed, and currently does not infringe, directly or indirectly, literally or under the doctrine of equivalents, any valid and enforceable claim of the '759 Patent, and is not liable for any infringement.

**THIRD DEFENSE**
**(Non-Infringement ('421 Patent))**

36. Cisco has not infringed, and currently does not infringe, directly or indirectly, literally or under the doctrine of equivalents, any valid and enforceable claim of the '421 Patent, and is not liable for any infringement.

**FOURTH DEFENSE**
**(Non-Infringement ('820 Patent))**

37. Cisco has not infringed, and currently does not infringe, directly or indirectly, literally or under the doctrine of equivalents, any valid and enforceable claim of the '820 Patent, and is not liable for any infringement.

**FIFTH DEFENSE**
**(Invalidity and Ineligibility ('759 Patent))**

38. Each asserted claim of the '759 Patent is invalid for failure to meet one or more of the conditions for patentability specified in Title 35, U.S.C., or the rules, regulations, and law related thereto, including, without limitation, 35 U.S.C. §§ 101, 102, 103, and/or 112.

**SIXTH DEFENSE**
**(Invalidity and Ineligibility ('421 Patent))**

39. Each asserted claim of the '421 Patent is invalid for failure to meet one or more of the conditions for patentability specified in Title 35, U.S.C., or the rules, regulations, and law related thereto, including, without limitation, 35 U.S.C. §§ 101, 102, 103, and/or 112.

**SEVENTH DEFENSE**
**(Invalidity and Ineligibility ('820 Patent))**

40. Each asserted claim of the '820 Patent is invalid for failure to meet one or more of the conditions for patentability specified in Title 35, U.S.C., or the rules, regulations, and law related thereto, including, without limitation, 35 U.S.C. §§ 101, 102, 103, and/or 112.

**EIGHTH DEFENSE**
**(Prosecution History Estoppel/Disclaimer and Recapture)**

41. The relief sought by Diorite is barred, in whole or in part, under the doctrine of prosecution history estoppel and/or disclaimer due to amendments and/or statements made during prosecution of the Asserted Patents. Diorite's claims for relief are further barred, in whole or in part, by the recapture rule. Diorite is estopped, based on statements, representations, and

admissions made during prosecution before the United States Patent and Trademark Office of the patent applications resulting in the Asserted Patents, as well as patent applications and proceedings related to the Asserted Patents, from asserting that Cisco has infringed, directly or indirectly, one or more claims of the Asserted Patents.

**NINTH DEFENSE**
**(Claim Vitiation and Ensnarement)**

42. Diorite cannot assert any claims for patent infringement under the doctrine of equivalents because such an asserted scope of equivalency would vitiate one or more claim limitations and/or would encompass or ensnare the prior art.

**TENTH DEFENSE**
**(Dedication to the Public)**

43. The relief sought by Diorite is barred, in whole or in part, because Diorite and/or predecessors-in-interest to the Asserted Patents dedicated to the public all methods, systems, and products disclosed in the Asserted Patents, but not literally claimed therein.

**ELEVENTH DEFENSE**
**(Limitation On Damages and Costs)**

44. Diorite's claim for damages is barred, in whole or in part, by 35 U.S.C. §§ 286 and/or 287. To the extent any claim of the Asserted Patents is invalid, Diorite is barred from recovering costs by 35 U.S.C. § 288.

**TWELFTH DEFENSE**
**(Good Faith)**

45. Cisco has engaged in all relevant activities in good faith, thereby precluding Diorite, even if it prevails, from recovering its reasonable attorneys' fees under 35 U.S.C. § 285.

**THIRTEENTH DEFENSE**
**(Equitable Defenses)**

46. Diorite's claims against Cisco are barred, in whole or in part, by the doctrines of waiver, patent misuse, implied waiver, acquiescence, legal estoppel, equitable estoppel, unclean hands, and/or other equitable defenses.

**FOURTEENTH DEFENSE**
**(Express License)**

47. Diorite's claims against Cisco are barred, in whole or in part, by one or more express licenses to the Asserted Patents, including the patent license agreement [redacted] On information and belief, Mitel is a predecessor-in-interest to the Asserted Patents, and Diorite acquired whatever rights it holds in those patents subject to the [redacted] Accordingly, Cisco is not liable for infringement of the Asserted Patents, and Diorite cannot recover damages on any accused units or associated revenues.

48. In addition, on information and belief, Diorite and/or one or more of its predecessors-in-interest to the Asserted Patents granted other express licenses to the Asserted Patents that extend to Cisco, its affiliates, and/or its suppliers, customers, or other parties from or through which Cisco obtained rights, and that cover, in whole or in part, the products and services accused of infringement and the conduct alleged in the FAC. Cisco's investigation of this defense is ongoing, and Cisco reserves the right to supplement this defense as additional facts become known through discovery.

**FIFTEENTH DEFENSE**
**(Implied License and Patent Exhaustion)**

49. Diorite's claims against Cisco are barred, in whole or in part, by implied licenses to the Asserted Patents, and/or under the doctrines of patent exhaustion, first sale, and/or the single recovery rule.

**SIXTEENTH DEFENSE**
**(No Exceptional Case)**

50. Diorite cannot show that any acts or omissions by Cisco render this an exceptional case justifying an award of attorneys' fees against Cisco pursuant to 35 U.S.C. § 285.

**SEVENTEENTH DEFENSE**
**(No Injunctive Relief)**

51. Diorite is not entitled to injunctive relief because any alleged injury to Diorite is not immediate or irreparable, Diorite has an adequate remedy at law, and the balance of hardships and the public interest do not favor injunctive relief.

**EIGHTEENTH DEFENSE**
**(Contractual Limitation on Damages)**

52. Diorite's claims for monetary relief are limited to the extent it or any predecessor-in-interest to the Asserted Patents undertook an obligation to license the Asserted Patents on fair, reasonable, and/or non-discriminatory terms.

**NINETEENTH DEFENSE**
**(Unenforceability Of The '421 Patent Due To Inequitable Conduct)**

53. The '421 Patent is unenforceable due to inequitable conduct committed during its prosecution before the United States Patent and Trademark Office ("PTO").

54. The '421 Patent issued from U.S. Patent Application No. 13/134,922, filed on June 21, 2011, which named Peter Couse and Vincent Somoza as inventors and was assigned to Mitel. Each individual associated with the filing and prosecution of that application owed a duty of candor

and good faith in dealing with the PTO, including a duty to disclose all information known to that individual to be material to patentability. 37 C.F.R. § 1.56(a). Michelle R. Whittington, Mitel's Corporate IP Counsel and a registered patent attorney (Reg. No. 43,844), was the attorney of record who prosecuted that application. She was the PTO's designated correspondent for the application, and she signed Applicant's Information Disclosure Statement dated January 4, 2013 and Applicant's responses to office actions dated May 13, 2014 and December 9, 2014. Ms. Whittington was thus substantively involved in the prosecution of that application and therefore owed that duty. 37 C.F.R. § 1.56(c).

55. Before the effective filing date of the '421 Patent, Cisco publicly released its WebEx conferencing technology and published materials describing and demonstrating it (collectively, the "WebEx References"). The WebEx References include, without limitation: (a) Cisco's press release announcing Cisco WebEx Meeting Center for the Apple iPad dated April 2, 2010[2]; (b) the Cisco WebEx website dated December 9, 2010[3]; (c) the Apple App Store (iTunes) listing for Cisco WebEx for iPad available on or before April 2, 2010[4]; (d) the Cisco Mobile 8.1 for iPhone Deployment Guide dated January 12, 2011[5]; (e) the video Cisco WebEx Meeting Center

---

[2] Cisco Brings Business Collaboration to the iPad with Cisco WebEx Meeting Center Available Immediately on the App Store (Apr. 2, 2010), https://newsroom.cisco.com/c/r/newsroom/en/us/a/y2010/m04/cisco-brings-business-collaboration-to-the-ipad-with-cisco-webex-meeting-center-available-immediately-on-the-app-store.html.

[3] Cisco WebEx for Apple Products Webpage (Dec. 9, 2010), https://web.archive.org/web/20101209165351/http://www.webex.com/apple/

[4] Cisco Brings Business Collaboration to the iPad with Cisco WebEx Meeting Center Available Immediately on the App Store (Apr. 2, 2010), https://newsroom.cisco.com/c/r/newsroom/en/us/a/y2010/m04/cisco-brings-business-collaboration-to-the-ipad-with-cisco-webex-meeting-center-available-immediately-on-the-app-store.html ("The Cisco WebEx application is available today via download from the App Store.")

[5] Cisco Mobile 8.1 for iPhone Deployment Guide, Cisco (2011), https://www.cisco.com/c/dam/en/us/solutions/enterprise-networks/mobile-workforce-architecture/cisco-mobile.pdf; *see also* Cisco Mobile 8.1 for iPhone is here - have you tried it?, Cisco Community site, https://community.cisco.com/t5/collaboration-applications/cisco-mobile-8-1-

on the iPhone dated January 8, 2009[6]; (f) the video Cisco WebEx on the iPad dated April 8, 2010[7]; (g) the video Cisco WebEx on a SmartPhone dated May 15, 2009[8]; and (h) the Cisco WebEx Meeting Center Product Presentation dated 2010[9]. The WebEx References describe and depict conferencing technology equipped with a user interface that displays images or video of each meeting participant, shows which participants are in a meeting and how each joined, and provides on-screen controls for connecting to and managing audio and video communications with those participants, including starting and stopping two-way video.

56. The WebEx References are but-for material to the patentability of at least claims 1, 3, 4, and 6 of the '421 Patent. During prosecution, the examiner rejected application claim 9, which issued as claim 1 of the '421 Patent and from which asserted claims 3, 4, and 6 of the '421 Patent depend, as obvious over U.S. Patent Pub. No. 2010/0073454 ("Lovhaugen") in view of U.S. Patent Pub. No. 2011/0273526 ("Mehin"), and allowed the claims only after Applicant amended claim 9 to distinguish the claimed participant panel and its call controls from those in the prior art. No WebEx reference or other product documentation was of record. Yet Diorite now maps WebEx user-interface options such as "End Call," "Start Video," and "Stop Video" to the options on the claimed "participant panel." Under Diorite's current assertion of the '421 Patent claims, the WebEx References, which publicly described and demonstrated the accused functionality before

---

for-iphone-is-here-have-you-tried-it/td-p/3567290 (showing guide was made available on or before January 12, 2011)

[6] Cisco WebEx Meeting Center on the iPhone (Jan. 8, 2009), https://www.youtube.com/watch?v=nHWLwPzXo9E

[7] Cisco WebEx on the iPad (Apr. 8, 2010), https://www.youtube.com/watch?v=mMFmnUHt-SEE

[8] Cisco WebEx on a SmartPhone (May 15, 2009), https://www.youtube.com/watch?v=8bBT07YsT-0

[9] Cisco WebEx Meeting Center Product Presentation (2010), https://www.cisco.com/c/dam/global/de_de/assets/portal-content/marketing-vertrieb/downloads/webex_meeting_center_e.pdf

the effective filing date of the ’421 Patent, are not cumulative of the art of record, and the PTO would not have allowed those claims had the WebEx References been disclosed.[10]

57. Mitel itself was intimately familiar with WebEx while the application that issued as the ’421 Patent was pending. Indeed, Mitel integrated Cisco’s WebEx into its own conferencing product that embodied the ’421 Patent, the Mitel UC360 Collaboration Point (which Mitel later rebranded as the MiVoice Conference Phone and MiVoice Video Phone). Release 2.1 of that product introduced a “Cisco WebEx™ Meetings” desktop application, and Mitel’s user guide for the product, dated September 2014, lists Cisco WebEx Meetings among the product’s built-in presentation and screen-sharing tools and instructs users how to sign into a WebEx account and start a WebEx meeting directly from the device.[11] Mitel had thus integrated WebEx into its own products by at least September 2014, while the application was still under examination, before Applicant’s December 9, 2014 response to office action, and months before the ’421 Patent issued on April 14, 2015.

58. On information and belief, Ms. Whittington and each of the named inventors of the ’421 Patent knew of the WebEx References and of their materiality to the claims of the application that issued as the ’421 Patent before that patent issued. First, Mitel considered Cisco a competitor. Indeed, in its SEC filings during the prosecution of the ’421 Patent, Mitel consistently identified Cisco as one of its main competitors.[12] Second, during prosecution, Ms. Whittington closely

---

[10] Cisco denies that WebEx practices any claim of the ’421 Patent.

[11] Mitel, MiVoice Conference and Video Phone User Guide, Release 2.1, SP2, at ii, v, 3–4, 8, 62 (Sept. 2014).

[12] Mitel Networks Corporation Form 10-K for Fiscal Year Ending April 30, 2012, available at https://www.sec.gov/Archives/edgar/data/1170534/000119312512275378/d358049d10k.htm (last accessed Oct. 8, 2026); Mitel Networks Corporation Form 10-K for Fiscal Year Ending April 30, 2013, available at https://www.sec.gov/Archives/edgar/data/1170534/000119312513269098/d514627d10k.htm (last accessed Oct. 8, 2026); Mitel Networks Corporation Form 10-K for Fiscal Year Ending December 31, 2014, available at

studied and distinguished in detail Lovhaugen, a patent application assigned to Cisco describing video conferencing technology. Ms. Whittington was therefore on notice that Cisco, a direct competitor of Mitel, was developing and marketing video conferencing technology. Third, on information and belief, as Mitel's Corporate IP Counsel, Ms. Whittington was aware of Cisco's publicly marketed conferencing products, including, for example, Cisco WebEx Meeting Center for the Apple iPad and Cisco WebEx Meeting Center for the iPhone. Fourth, as alleged above, Mitel had integrated WebEx into its own UC360 conferencing products while the application was pending, and, on information and belief, Ms. Whittington, as Mitel's Corporate IP Counsel, and the named inventors as contributors to the development of the UC360 product, were all aware of Mitel's own conferencing products and of their integration with Cisco's WebEx. Moreover, because Ms. Whittington had obtained allowance only by distinguishing the claimed participant panel and its call controls from the prior art, she knew that Cisco's conferencing products offering participant call controls, such as WebEx, were material to the claims. Despite that knowledge, Ms. Whittington chose not to disclose any of the WebEx References to the PTO at any time during prosecution of the '421 Patent. Indeed, the only Information Disclosure Statement Ms. Whittington filed cited five patent documents, and she represented that they had first been cited in an October 9, 2012 communication from the European Patent Office in a counterpart application. Applicant disclosed no non-patent literature or product documentation of any kind.

59. On information and belief, Ms. Whittington deliberately withheld the WebEx References with the specific intent to deceive the PTO. Specific intent to deceive is reasonably

---

https://www.sec.gov/Archives/edgar/data/1170534/000119312515064260/d831486d10k.htm (last accessed Oct. 8, 2026); Mitel Networks Corporation Form 10-K for Fiscal Year Ending December 31, 2015, available at https://www.sec.gov/Archives/edgar/data/1170534/000119312516483558/d140117d10k.htm (last accessed Oct. 13, 2026).

inferred, and is the single most reasonable inference, from the facts alleged above. Ms. Whittington knew of the WebEx References and their materiality to the claims. The WebEx References disclose the same participant panel with call controls that is now accused for the limitation of the '421 claim on which allowance of the claims depended. Yet Ms. Whittington and the named inventors chose not to disclose the WebEx References while at the same time arguing to the examiner that the prior art lacked a participant panel. According to the current assertion of the '421 patent claims, the WebEx References would have directly refuted Ms. Whittington's and the inventors' representation to the Patent Office.

60. As a result of this inequitable conduct, the '421 Patent is unenforceable in its entirety.

**TWENTIETH DEFENSE**
**(Unenforceability Of The '820 Patent Due To Inequitable Conduct)**

61. The '820 Patent is unenforceable due to inequitable conduct committed during its prosecution before the PTO.

62. The '820 Patent issued on May 17, 2016 from U.S. Patent Application No. 12/770,896, filed on April 30, 2010, which named Pedro I. Sanchez, Matthew T. Battig, and Ying Du as inventors and was assigned to Benbria Corporation ("Benbria"). The application was prosecuted by three successive firms, F. Chau & Associates, LLC, Bay State IP, LLC, and, finally, Nixon Peabody LLP, the last of which filed the December 21, 2015 amendment that secured allowance of the claims and remained counsel of record through issuance. Every individual associated with the filing and prosecution of the application owed a duty of candor and good faith in dealing with the PTO, including a duty to disclose all information known to that individual to be material to patentability, for as long as the application remained pending. 37 C.F.R. § 1.56(a), (c).

63. Mitel acquired the application while it was still pending. As alleged in the Twenty-First Defense, Benbria sold the application to Mitel under an [redacted] dated April 19, 2016, after the PTO mailed its January 13, 2016 Notice of Allowance but nearly a month before the ’820 Patent issued. From that date until issuance, Mitel owned the application, and each Mitel individual substantively involved in its prosecution, including, on information and belief, Michelle R. Whittington, Mitel’s Corporate IP Counsel and a registered patent attorney (Reg. No. 43,844), owed the duty of candor. 37 C.F.R. § 1.56(c). Indeed, within weeks after the ’820 Patent issued, Mitel revoked Nixon Peabody’s power of attorney and directed all PTO correspondence regarding the ’820 Patent to Ms. Whittington, who then requested a certificate of correction to claim 8 based on her review of Applicant’s December 21, 2015 amendment.

64. Years before the April 30, 2010 filing date of the application that issued as the ’820 Patent, Mitel and Inter-Tel, which Mitel acquired in 2007,[13] sold the Inter-Tel 5000 and Mitel 5000 IP communications platforms and published reference, installation, and programming manuals describing them (collectively, the “Mitel 5000 References”). The Mitel 5000 References include, without limitation: (a) Inter-Tel 5000 Installation Manual, Issue 2.2 (July 2007); (b) Inter-Tel 5000 Installation Manual, Issue 2.3 (Sept. 2007); (c) Inter-Tel 5000 Features and Programming Guide, Issue 2.4 (May 2008); (d) Mitel 5000 Reference Manual, Issue 3.0 (Oct. 2008); (e) Mitel 5000 Reference Manual, Issue 3.1 (Dec. 2008); and (f) Mitel 5000 CP Reference Manual, Issue 3.2 (Sept. 2009). The Mitel 5000 References describe IP endpoints that connect over an IP network to a central communications server, receive audio over the Real-time Transport Protocol (“RTP”), and use the Real-time Transport Control Protocol (“RTCP”) alongside that audio stream. For

[13] *Mitel completes Inter-Tel purchase, claims SMB leadership*, NetworkWorld (Aug. 20, 2007), https://www.networkworld.com/article/824905/lan-wan-mitel-completes-inter-tel-purchase-claims-smb-leadership.html.

example, the Mitel 5000 References assign dedicated RTCP ports alongside the RTP voice ports for IP endpoints communicating with the system; explain that each Mitel IP endpoint audio channel uses "base+2 for RTP and base+3 for RTCP, if used"; and describe an endpoint web interface with an "RTP/RTCP Page" that "[d]isplays the status of a Real-Time Transport Protocol/Real-Time Transport Control Protocol stack."[14] The Mitel 5000 References also describe a dedicated suite of "Diagnostic Features" for those IP endpoints and audio sessions. These include an Audio Diagnostics feature that "allows a user to generate diagnostics information about audio problems" from the endpoint; the system collects that information, reports it as an alarm on the administrator's endpoint, and can automatically deliver it to Mitel Technical Support.[15] They also include IP resource diagnostics that report, for each audio session, the "[p]ercentage of in-time audio frames" and the "[a]verage network jitter."[16]

65. The Mitel 5000 References are but-for material to the patentability of at least claim 1 of the '820 Patent. Applicant obtained allowance of claim 1 only by merging diagnostic limitations into it. During prosecution, the examiner rejected the claims over U.S. Patent No. 8,243,949 ("Bhow") and, in a June 7, 2013 final rejection, over Bhow in view of U.S. Patent Pub. No. 2006/0187900 ("Akbar"). In response, Applicant amended claim 1 to require that each speaker include a "diagnostic application" that "performs diagnostics" on that speaker, and argued that neither Bhow nor Akbar disclosed that diagnostic application. On September 24, 2015, the examiner again rejected claim 1, this time over Bhow in view of U.S. Patent Pub. No. 2003/0220705 ("Ibey") and Akbar, finding that Ibey disclosed the claimed speaker diagnostic

[14] Inter-Tel 5000 Installation Manual, Issue 2.2, at 5-619, B-20 (July 2007); Inter-Tel 5000 Features and Programming Guide, Issue 2.4, at 5-264–5-265 (May 2008); Mitel 5000 Reference Manual, Issue 3.0, at 9-60, 9-68 (Oct. 2008)

[15] *See, e.g.*, Mitel 5000 Reference Manual, Issue 3.0, at 8-6 (Oct. 2008).

[16] *See, e.g.*, Mitel 5000 Reference Manual, Issue 3.0, at 8-6–8-9, 8-31 (Oct. 2008).

application, but indicated that dependent claim 3 would be allowable if rewritten in independent form. On December 21, 2015, Applicant amended claim 1 "to include the entire subject matter of claims 2 and 3," thereby requiring that each speaker's diagnostic application and low level status manager generate diagnostic reports that are transmitted to the server over the signaling link and the low level status link. The examiner then allowed the claims. Although the examiner relied on Akbar's RTCP application for the claimed transport link, nothing of record disclosed using RTCP in connection with the claimed speaker diagnostics or diagnostic reporting. No Mitel or Inter-Tel product documentation was of record. Yet Diorite now accuses WebEx's use of RTCP of meeting the very diagnostic limitations that Applicant added to claim 1 to secure allowance. Under Diorite's current assertion of the '820 Patent claims, the Mitel 5000 References, which describe Mitel's own use of RTCP on IP endpoints, together with endpoint audio diagnostics reported to a central system, years before the application was filed, are not cumulative of the art of record, and the PTO would not have allowed claim 1 had the Mitel 5000 References been disclosed.[17]

66. Mitel, which owned the application before the '820 Patent issued, necessarily knew of the Mitel 5000 References. They are Mitel's own published product documentation, describing communications platforms that Mitel and its subsidiary Inter-Tel designed, sold, and supported. On information and belief, when Mitel acquired the application in April 2016, Ms. Whittington and the other Mitel individuals substantively involved in the prosecution of the application after April 19, 2016, reviewed the application and its prosecution history. They therefore knew that Applicant had overcome the prior art only by adding speaker-diagnostic and diagnostic-reporting limitations to claim 1. Those same Mitel personnel thus knew that Mitel's own IP endpoints, which

[17] Cisco denies that WebEx practices any claim of the '820 Patent, including that WebEx's use of RTCP meets any diagnostic limitation.

used RTCP alongside RTP audio and supported endpoint audio diagnostics reported to a central system, were material to the claims Mitel was acquiring.

67. On information and belief, Ms. Whittington and the other Mitel individuals substantively involved in the prosecution of the application after April 19, 2016 each knew of the Mitel 5000 References and of their materiality to the claims before the ’820 Patent issued. First, the Mitel 5000 References document Mitel’s own products. Second, as Mitel’s Corporate IP Counsel, Ms. Whittington was, on information and belief, familiar with Mitel’s product portfolio and its technical documentation, including the Mitel 5000 platform. Third, because Applicant overcame the prior art only by adding and then expanding speaker-diagnostic limitations, anyone reviewing the prosecution history knew that networked endpoints that perform diagnostics and report the results to a server were material to the claims. Although the PTO had already issued its Notice of Allowance when Mitel acquired the application, the application remained pending, and Mitel could have brought the Mitel 5000 References to the PTO’s attention by, for example, petitioning to withdraw the application from issue for consideration of a request for continued examination. 37 C.F.R. § 1.313(c)(2). Despite that knowledge, Mitel never disclosed any of the Mitel 5000 References, or any other Mitel or Inter-Tel reference, to the PTO, and no such reference was disclosed at any time during prosecution of the ’820 Patent. Indeed, the only Information Disclosure Statement filed during prosecution, dated August 1, 2012, cited two U.S. patent application publications, one European patent application publication, and the search report and written opinion from Applicant’s counterpart PCT application. Applicant disclosed no product documentation of any kind, and filed no further disclosure after adding the diagnostic limitations to claim 1. Mitel, likewise, filed no disclosure after it acquired the application, and instead allowed the ’820 Patent to issue and then, within weeks, took control of the issued patent.

68. On information and belief, Ms. Whittington and the other Mitel individuals substantively involved in the prosecution of the application after April 19, 2016 deliberately withheld the Mitel 5000 References with the specific intent to deceive the PTO. Specific intent to deceive is reasonably inferred, and is the single most reasonable inference, from the facts alleged above. These individuals knew of the Mitel 5000 References, which describe Mitel's own products, and knew of their materiality to the claims Mitel had just acquired. Under Diorite's current assertion of the '820 Patent claims, the Mitel 5000 References disclose the same use of RTCP that Diorite contends meets the diagnostic limitations Applicant added to claim 1 to secure allowance, together with endpoint audio diagnostics reported to a central system. Yet Mitel withheld its own references, allowed the '820 Patent to issue on the strength of Applicant's argument that the prior art lacked the claimed speaker diagnostic application and on the diagnostic-reporting limitations merged into claim 1 to overcome Ibey, and then immediately took control of the issued patent. According to Diorite's current assertion of the '820 Patent claims, the Mitel 5000 References would have directly refuted Applicant's representations to the PTO.

69. As a result of this inequitable conduct, the '820 Patent is unenforceable in its entirety.

**TWENTY-FIRST DEFENSE**
**(Lack of Standing)**

70. Diorite's claims are barred, in whole or in part, because Diorite lacks standing to assert one or more of the Asserted Patents. To sue for infringement in its own name, Diorite must have held legal title to, or all substantial rights in, each Asserted Patent at the time it filed suit and at all times thereafter. 35 U.S.C. § 281. On information and belief, Mitel and/or its affiliates, from or through which Diorite claims title, did not satisfy all of the conditions and requirements necessary to validly assign or transfer title to, or all substantial rights in, at least some of the

Asserted Patents, including the ’820 Patent. The ’820 Patent issued from U.S. Patent Application No. 12/770,896, published as U.S. Patent Pub. No. 2011/0268286, which Benbria sold to Mitel under [redacted] dated April 19, 2016. [redacted] Accordingly, Diorite does not hold legal title to the ’820 Patent. To the extent any transfer in Diorite’s chain of title was ineffective, incomplete, or subject to rights retained by Mitel or any third party, Diorite does not hold legal title to, or all substantial rights in, the affected Asserted Patents and cannot maintain this action as to those patents, including without joining all necessary parties. Cisco’s investigation of this defense is ongoing, and Cisco reserves the right to supplement this defense as additional facts become known through discovery.

**TWENTY-SECOND DEFENSE**
**(Prior Commercial Use)**

71. Diorite’s claim for damages is barred, in whole or in part, by 35 U.S.C. § 273, because Cisco used the accused techniques commercially both internally and with customers at least one year before effective filing date of the claimed invention of the ’421 and ’820 patents.

**RESERVATION OF ADDITIONAL DEFENSES**

72. Cisco reserves the right to assert additional defenses if discovery or other analysis indicates that additional defenses are appropriate.

**PRAYER FOR RELIEF**

73. WHEREFORE, Cisco prays for judgment:

A. A judgment in favor of Cisco denying Diorite all relief requested in its FAC and dismissing its FAC with prejudice;

B. A judgment against Diorite finding that Cisco has not infringed, does not infringe, and is not liable for any infringement of any claim of the ’759 Patent, the ’421 Patent, or the ’820 Patent;

C. A judgment against Diorite finding that the claims of the ’759 Patent, the ’421 Patent, and the ’820 Patent are invalid and/or unenforceable;

D. A judgment that this is an exceptional case within the meaning of 35 U.S.C. § 285 and awarding Cisco its reasonable attorneys’ fees;

E. An award of costs to Cisco; and

F. Such other relief as the Court shall deem just and proper.

**DEMAND FOR JURY TRIAL**

74. Cisco hereby requests a trial by jury on all issues so triable, including specifically on Diorite’s claims and Cisco’s defenses thereto.

Dated: October 13, 2026

Respectfully submitted,

*/s/ Krishnan Padmanabhan*

Krishnan Padmanabhan (*pro hac vice*)
CA State Bar No. 254220
Email: kpadmanabhan@fenwick.com
Christopher Gresalfi (*pro hac vice*)
NY State Bar No. 5472121
Email: cgresalfi@fenwick.com
Doug Etts (*pro hac vice*)
NY State Bar No. 6049027
Email: Detts@fenwick.com
**FENWICK & WEST LLP**
902 Broadway, 18th Floor
New York, NY 10010-6035
Telephone: 212.430.2600
Scott Border (*pro hac vice*)
DC State Bar No. 982214
Email: sborder@fenwick.com
**FENWICK & WEST LLP**
1155 F St NW, 12th Floor
Washington, DC 20004
Telephone: 202.970.3000

Emma Lee (*pro hac vice*)
CA State Bar No. 344074
Email: Emma.Lee@fenwick.com
**FENWICK & WEST LLP**
One Front Street, 32nd Floor
San Francisco, CA 94111
Telephone: 415.875.2007

Shaun W. Hassett
TX State Bar No. 24074372
Email: shaunhassett@potterminton.com
**POTTER MINTON, P.C.**
102 N. College Ave., Suite 900
Tyler, TX 75702
Tel: (903) 597-8311

*Attorneys for Defendant Cisco Systems, Inc.*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that the foregoing document was served via electronic service on October 13, 2026, to all counsel of record via the Court's CM/ECF system per Local Rule CV-5(a).

*/s/ Krishnan Padmanabhan*
Krishnan Padmanabhan

**CERTIFICATE OF AUTHORIZATION TO SEAL**

Pursuant to Local Rule CV-5(a)(7)(B), I am authorized to file the foregoing document under seal pursuant to paragraph 18 of the Protective Order (Dkt. 32) because this document references Designated Material.

*/s/ Krishnan Padmanabhan*
Krishnan Padmanabhan